D. T. IGLEHART & CO. et al. v. BARTLETT STATE BANK et al.

(Court of Civil Appeals of Texas. Austin. Nov. 1, 1911.)

PRINCIPAL AND AGENT (§ 36*)—TERMINATION OF AGENCY—DISCHARGE OF AGENT.

Where a firm of cotton packers, who had employed an agent at a stated salary for the whole cotton season, wrote him that they had checked up his purchases, and did not wish him to buy any more cotton, having notice that the cotton he bought was graded too high, and that they wished him to resell all the cotton he had on hand, which was an act within the terms of his agency, such letter was not a termination of the agency, and a purchase of cotton by the agent bound his principals.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 36.*]

Appeal from Williamson County Court; T. J. Lawhon, Judge.

Action by the Bartlett State Bank and others against D. T. Iglehart and R. G. Crosby, copartners, doing business under the firm name of D. T. Iglehart & Co., and another. From a judgment against the partnership, it appeals. Affirmed.

The nature and result of this suit, as stated in appellants' brief, are as follows:

"This suit was instituted by the plaintiff, Bartlett State Bank, against D. T. Iglehart & Co., a partnership composed of D. T. Iglehart and R. G. Crosby, and against the individual members of said firm, and against A. Beckmann, alleging that about March 31, 1910, the defendant Beckmann sold to the defendant D. T. Iglehart & Co. 299 bales of cotton, and that after such sale said Iglehart & Co. refused to take said cotton; that the aggregate price that Iglehart & Co. were to pay for said cotton was $22,848.62; that after such refusal of Iglehart & Co. Beckmann sold to J. M. Allen, on April 10, 1910, said cotton for the aggregate price of $21,-856.93, that being the highest market price obtainable, leaving a difference chargeable to Iglehart & Co. of $991.69; that on or about the 9th day of April, 1910, said Beckmann presented to the plaintiff bank for payment a draft drawn by him on Iglehart & Co., of Austin, Tex., for $991.69, to which draft was attached a statement of account, showing that amount due by Iglehart & Co. to said Beckmann; that said bank discounted said draft 5 per cent. and cashed it, and that thereby said bank became the assignee of the claim of said Beckmann against Iglehart & Co.; that said draft was forwarded by said bank to a bank in Austin for collection, and was presented to Iglehart & Co. for payment, and they refused to pay same, and it was duly protested, the protest fees amounting to $2.50. The plaintiff bank brings its suit against all of the defendants for the amount of said draft and the protest fees, interest, and costs.

"Iglehart & Co. answered, first by a plea of privilege to be sued in Travis county, where they reside, which plea, when heard by the court, was overruled. They answered further by general denial, and specially alleged that the sale of cotton which was purported to have been made to them was made to one E. L. Reifschneider, who was purporting to act as their agent, but that said Reifschneider was not their agent, and had no authority to buy such cotton for them, and that they are not bound by the acts of the said Reifschneider, and are not liable to the plaintiff in this suit. They answer further that, as soon as they learned that said Reifschneider had purported to buy such cotton for them, they notified said Beckmann that Reifschneider was not their agent, and had no authority to buy such cotton for them, and that they would not receive it. They answered further that, if it is found that said Reifschneider was their agent, and they were bound by his acts, then they are not liable, because the minds of the parties never did agree upon a price to be paid for said cotton. They further answered that if it be found that they are bound by the acts of the alleged agent then they are not liable to plaintiff, because said Beckmann agreed to settle his claim with the agent, and agreed and bound himself to look to said agent for his damages, and these defendants were thereby released.

"The defendant Beckmann answered, making practically the same allegations as made by the plaintiff, making same more in detail, and alleging that said Reifschneider represented Iglehart & Co. at Bartlett during the season of 1909 and 1910 in buying cotton, said Iglehart & Co. having and maintaining agents at different places in this state for the purpose of buying cotton; that during said season, and previous to March 31, 1910, said Reifschneider had bought various large and small lots of cotton for Iglehart & Co. at Bartlett, which cotton had been received by them, and of which transactions said Beckmann had knowledge; that said Beckmann had sold several lots of cotton to Iglehart & Co., through said Reifschneider, and that at the time of the alleged sale on March 31, 1910, he had no knowledge or notice of any limitation on the authority of said Reifschneider to buy such cotton for Iglehart & Co.; that such sale to Iglehart & Co. was for 14.4 cents per pound, and the resale to J. M. Allen for 13.77½ cents per pound; that the resale was for the best market price obtainable, and was made within a reasonable time. He alleges the weight of said cotton to be 158,671 pounds, and attaches a list of the numbers and weights of the bales to his answer. He asks for judgment over against Iglehart & Co. for any amount that judgment might be rendered against him.

"Iglehart & Co. answered the allegations of Beckmann by a general denial. Both the plaintiff and Beckmann presented certain exceptions to the answer of Iglehart & Co., which exceptions were overruled. Beckmann also generally denied the allegations of Iglehart & Co., and specially denied that he had ever agreed to settle his claim for damages growing out of the transaction with Reifschneider.

"The case was tried before the court without a jury, on October 28, 1910, and the court rendered judgment in favor of the plaintiff bank against Iglehart & Co. and the members of said firm for $880.55, with 6 per cent. interest, and against Beckmann for $1027.53, with 6 per cent. interest, and in favor of Beckmann over against Iglehart & Co. for $880.55, with 6 per cent. interest. To which judgment the defendants Iglehart & Co. excepted, and gave notice of appeal. Iglehart & Co. requested the court to file their written findings of fact and conclusions of law, which he did. Iglehart & Co. also requested certain additional findings of fact, a part of which were approved and allowed by the court and a part rejected. Iglehart & Co. in due time filed their supersedeas bond, and perfected their appeal to this court."

Wilcox & Graves, for appellant.  J. V. Morris and Stanton Allen, for appellees.

KEY, C. J. (after stating the facts as above). While all the questions presented in

appellants' brief have been duly considered in the consultation room, this opinion will be limited to a discussion of but one question. The controlling question in the case is one of agency. The undisputed testimony shows that, prior to the beginning of the cotton season of 1909–1910, appellants Iglehart & Co., who were cotton factors in Austin, Tex., employed one E. L. Reifschneider to act as their agent in buying cotton at Bartlett, Tex. On March 31, 1910, Reifschneider, acting for Iglehart & Co., made a contract with A. Beckmann, for the purchase of 299 bales of cotton for Iglehart & Co. at 14.4 cents per pound. Iglehart & Co. refused to accept and pay for the cotton, and, on the 2d day of April following, Beckmann sold the cotton on the market in Bartlett for the highest price obtainable, which was 13.77½ cents per pound. The difference between the total sum which Reifschneider agreed to pay for the cotton and the total sum for which Beckmann sold it was $991.69, for which sum Beckmann drew a draft on Iglehart & Co., which draft he discounted or sold to the bank, and guaranteed its payment. If Reifschneider was Iglehart & Co.'s agent with the power to bind them by the contract he made for the purchase of the cotton on March 31, 1910, the judgment ought to be affirmed. The trial court seems to have concluded that Reifschneider had previously been discharged, and was not in fact Iglehart & Co.'s agent at the time referred to, but that, as he had formerly been their agent and had dealt with Beckmann as such, and as Beckmann had no notice of the revocation of his agency, he had the right to deal with him as such agent, and Iglehart & Co. were bound by the contract of sale referred to.

One of the appellees, the Bartlett State Bank, has filed a cross-assignment of error, asserting that the court's finding that Iglehart & Co. had discharged E. L. Reifschneider from their employ, on March 23, 1910, is not supported by the testimony, and we sustain that assignment. Appellants contended in the court below, and contend in this court, that Reifschneider was discharged through the medium of a letter, which they sent him, and which reads as follows: "March 23, 1910. Mr. E. L. Reifschneider, Bartlett, Texas— Dear Sir: We are in receipt of your outturns of the 88 B/C you delivered Hearne & Delesdinear. We have been able to check up 63 B/s of the 88, and find that the 63 B/s lose $64.40 in weight, or 460 lbs. at 14⅛¢. Also you delivered the 63 B/s for $45.66 less in class than you paid for. We could not check up all of the 88 B/s because you have never sent us the invoice of the last cotton you bought, that is, the cotton we did not know you had bought. We do not wish to buy any more cotton. We notice that numbers 24,375, 24,894, 24,895, 24,896 and 24,898, which you took up and paid for as good middling, you delivered for strict low middling.

140 S.W.—51

This is a fine way to make money out of the cotton business. We would thank you to re-sample all of the cotton you have on hand, on both sides, and send the samples to us with the numbers in same. Yours truly, D. T. Iglehart & Co." We fail to find anything in the letter which can be construed as discharging Reifschneider and terminating his agency. It seems to contain certain complaints as to the manner in which he had been conducting the business at Bartlett, and contains the statement that Iglehart & Co. did not wish to buy any more cotton; but, instead of telling him that he was discharged, or that his agency was terminated, it concludes with a request that he should proceed to do certain things, which they had a right to require him to do under his contract of agency. It was also shown that when Reifschneider conversed with Iglehart & Co. by telephone on March 31st in reference to buying Beckmann's cotton they told him they did not want the cotton, and would not make any offer for it, but they did not tell him that he was discharged and his agency revoked. From the beginning of the cotton season in August, 1909, and up to that time, Reifschneider had been acting as their agent in buying cotton in Bartlett, and had previously so acted in a transaction with Beckmann. At the beginning of the cotton season, Iglehart & Co. had written to both banks in Bartlett, stating that Reifschneider was their agent to buy cotton and draw on them in payment therefor. Prior to the 31st of August, 1910, neither of the banks had received any other notice from Iglehart & Co.; but the Bartlett State Bank, the plaintiff in this case, was aware of the fact that that they had repudiated the contract made by Reifschneider for the purchase of Beckmann's cotton, and had refused to accept and pay for the cotton, before the bank acquired Beckmann's draft on Iglehart & Co.

We do not find it necessary to determine whether or not there was such a holding out of Reifschneider as their agent as would estop Iglehart & Co. from denying that he was such from March 31st. According to their own testimony, he had been employed by them at a salary of $900 for the cotton season, and was to act as their agent in buying cotton at Bartlett, or anywhere else they chose to send him. Having been employed by them and placed in Bartlett for that purpose, he had the power to bind Iglehart & Co. by contracts for the purchase of cotton until his agency was revoked; and the fact that they told him that they did not want to buy any more cotton, and instructed him not to buy the cotton in question for them, did not, as to Beckmann or any other person, not having notice of the private instructions referred to, constitute a limitation upon Reifschneider's power as an agent.

Hence we conclude that, as the trial court's finding that Reifschneider's agency had been

revoked on the 23d day of March is without evidence to support it, the judgment rendered by that court is correct, and it will be affirmed.

Affirmed.